UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY KERN,

       Plaintiff,                            CIVIL ACTION NO. 11-11970

      v.                                 DISTRICT JUDGE SEAN F. COX

CHRYSLER UAW PENSION        MAGISTRATE JUDGE MARK A. RANDON
PLAN,

       Defendant.
_____/

### REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

      This ERISA denial of benefits case is before the Court on cross-motions for judgment on the administrative record (Dkt. Nos. 10 & 11). Defendant Chrysler UAW Pension Plan ("Defendant") seeks affirmance of its administrative decision denying Plaintiff Mary Kern's request for widow's pension benefits; Plaintiff moves for reversal of that decision. This case turns on the Plan's language regarding the election of widow's pension benefits when a plan participant dies before his one year marriage anniversary.

      Judge Sean F. Cox referred the cross motions to this Magistrate Judge for a report and recommendation (Dkt. No. 12). Because Defendant's decision to deny Plaintiff widow's pension benefits was not arbitrary and capricious, **IT IS RECOMMENDED** that Defendant's motion for judgment on the administrative record be **GRANTED** and that Plaintiff's motion for judgment on the administrative record be **DENIED**.

I. BACKGROUND

John H. Kern was a Chrysler LLC employee and participant in the Chrysler UAW Pension Plan (the "Plan"). Mr. Kern married Plaintiff on April 19, 2004 (Dkt. No. 9; Administrative Record, "AR" 4). Sadly, less than four months into their marriage, Mr. Kern died on August 4, 2004 (AR 13). At the time of Mr. Kern's death, he was an active Chrysler employee (AR 1).

In April 2005, Plaintiff called Chrysler's human resources department to file a claim for widow's pension benefits (Dkt. No. 1; Compl. ¶ 15) and was told that she was not eligible for such benefits (*Id.* ¶ 16). Plaintiff took no further action for nearly four years.

On February 22, 2009, Plaintiff's counsel wrote to Benefit Express (a service provider for the Plan) notifying the Plan of Plaintiff's disagreement with Chrysler's April 2005 oral denial of benefits, and her intention to continue to pursue widow's pension benefits (AR 9-10). Benefit Express responded to Plaintiff's counsel on April 23, 2009 instructing Plaintiff on the formal process require to initiate a claim (AR 19). Benefit Express received Plaintiff's formal claim for widow's pension benefits on March 17, 2010 (AR 33).

The Plan denied Plaintiff's claim for widow's pension benefits – under the surviving spouse option – because she had not been married to Mr. Kern for at least one year (AR 34).[1] The denial letter informed Plaintiff that she could not be named the beneficiary of Mr. Kern's

---

[1] The surviving spouse option applies when a pensioner dies *after* retirement. This case involves widow's pension benefits, which apply when an active employee dies *before* retirement. However, as will be explained more fully below, the widow's pension benefit eligibility requirement incorporates by reference the requirements of the surviving spouse benefit.

pension benefit until after the one year anniversary of their marriage (*i.e.* April 19, 2005), and Mr. Kern died before he could make that election (AR 34).

On July 8, 2010, Plaintiff appealed this denial of benefits, citing a 2001 SPD that provided:

> **Widow's/Widower's Pension Benefits:**
>
> Your spouse will receive a benefit if you die while actively employed after meeting the requirements for early retirement.
>
> Your spouse is eligible for a widow's/widower's benefit if you die while actively employed:
>
> • At or after age 60 with 10 years or more of credited service;
> • Between ages 55 and 60 with combined years of age and credited services of 85 or more; or
> • Before age 55 with 30 years or more of credited service.

(AR 37-39, 69)

Of note, the 2001 SPD does not mention the minimum one year marriage requirement that the Plan relied upon to deny Plaintiff benefits.

The Chrysler Group LLC – UAW Pension Board of Administration (the "Board") responded to Plaintiff's appeal (AR 42). The Board upheld the decision to deny Plaintiff's claim for benefits. It relied upon Sections (9)A and (9)B(ii) of the Plan.

The Board's denial letter also explained the widow's pension benefit language in the 2008 SPD:

> Further, the 2008 [SPD] for the UAW Hourly and Salaried Employees, Retirees and Surviving Spouses, the document that summarizes the provisions of the Plan, in reference to Widow(s)/Widower(s) Pension Benefit summarizes eligibility for this benefit as:
>
> • Have been married for at least one year

- Are actively employed with Chrysler LLC
- Are eligible for early retirement under the Pension Plan

(AR 042)

On May 4, 2011, Plaintiff filed suit challenging the Board's final denial of her claim for widow's pension benefits (Dkt. No. 1; Compl.). Plaintiff's Complaint consists of a single count, brought under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(b) (*Id.*).

### III. ANALYSIS

*A. Standard of Review*

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The standard of review for ERISA denial of benefits challenged under Section 502(a)(1)(B) is *de novo*, unless the benefit plan gives the plan administrator discretion to determine eligibility for benefits or construe plan terms. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Haus v. Bechtel Jacobs Co.*, 491 F.3d 557, 561 (6th Cir. 2007). In the latter instance, the Court must apply the highly deferential "arbitrary and capricious" standard of review to the administrator's benefit determination. *Haus*, 491 F.3d at 561. The arbitrary and capricious standard "is the least demanding form of judicial review of administrative action.... When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (internal quotation marks and citation omitted). An administrator's decision will therefore be upheld "if it is the

result of a deliberate principled reasoning process, and if it is supported by substantial evidence."

*Id.*

The relevant Plan language granting discretion in the Board to interpret the language of the Plan – and determine eligibility for widow's pension benefits – states as follows:

> The Board of Administration shall have discretionary authority to interpret the Plan and determine eligibility for and the amount of benefits in accordance with the terms of this Pension Plan. Any Board interpretation or Board determination shall be given full force and effect unless it can be shown that the interpretation or determination is arbitrary and capricious.

(AR 195)

Based upon this language, Defendant's decision regarding Plaintiff's widow's pension benefits is discretionary. Thus, this Court should review the administrative decision denying Plaintiff's claim for widow's pension benefits under the arbitrary and capricious standard of review.

### B. Defendant's Interpretation Of The Plan Was Not Arbitrary And Capricious

Plaintiff's first argument is that Defendant's interpretation of the Plan, as requiring at least a one-year marriage to receive widow's pension benefits, was arbitrary and capricious (Dkt. No. 11; Pl's Br. at 5-8). Plaintiff begins with the proposition that the Internal Revenue Code ("IRC") and ERISA both mandate that plans provide surviving spouse benefits. This is, indeed, the case. *See* 26 U.S.C. § 401 and 29 U.S.C § 1055. Both statutes, however, also permit plans to limit such benefits to marriages lasting at least a year. The relevant statutory language from ERISA reads:

> [A] plan *may* provide that a qualified joint and survivor annuity (or a qualified preretirement survivor annuity) will not be provided unless the participant and spouse had been married throughout the 1–year period ending on the earlier of –
>
> (A) the participant's annuity starting date, or

(B) the date of the participant's death.

29 U.S.C. § 1055(f)(1) (emphasis added)[2]

Because the statute uses the word "may" instead of "shall," section 1055(f) is permissive rather than mandatory. *See, e.g., Cajun Industries, LLC 401(k) Plan v. Kidder*, Case Nos. 09–267–BAJ–SCR, 10–CV–099–BAJ–SCR, 2011 WL 1598387 *4 (M.D. La., April 27, 2011). In other words, ERISA does not mandate a one-year minimum marriage limitation on surviving spouse benefits, but rather permits plans to include such a limitation.[3] The issue then becomes whether the Plan includes a valid one-year marriage requirement in the section covering widow's pension benefits. More specifically, was Defendant's *interpretation* of the Plan's language as containing a one-year marriage requirement for widow's pension benefits arbitrary and capricious?

The relevant language from the Plan concerning widow's pension benefits, while far from a model of clarity, reads as follows:

**(9) Surviving Spouse Benefits**

B. Widow's/Widower's Pension Benefit

The surviving spouse of an employee

---

[2] The IRC contains similar language permitting a one-year marriage duration requirement for surviving spouse benefits. *See* 26 U.S.C. § 401(11)(D)

[3] The parties expended significant, and somewhat superfluous, effort briefing issues concerning whether the Plan complied with various IRS rules and regulations (Dkt. No. 11; Pl.'s Br. at 1-2) (Dkt. No. 14; Def.'s Resp. at 2-4) (Dkt. No. 16; Pl.'s Repl. at 1-2). Plaintiff's reply brief, however, finally clarified that "Plaintiff does not argue that she should get the benefits because of non-compliance with the IRS Code.... Instead, [] Defendant must overcome strong public policy evidenced by the favorable treatment given to surviving widows by the IRS Code by clearly manifesting an express intent to overcome the default rule of survivor's benefits...." (Dkt. No. 16 at 2-3). Thus, this entire line of argument turned out to be somewhat of a blind alley. In any event, this Court recognizes the default setting, so to speak, in ERISA and the IRC is that plans must provide for survivor's benefits.

> (I) who dies on or after attaining age 60 with 10 years or more of credited service... *and*
>
> *(ii) who, if he had retired at the date of his death, would have been eligible to make the election under Section (9)A. shall be entitled to a monthly pension during her lifetime, terminating with the last monthly payment before her death. The monthly pension payable to the surviving spouse shall be the amount she would have been entitled to receive under Section (9)A. above, if the employee had retired on the date of his death, under Section (5) or Section (7), whichever is applicable, and had made the election under Section (9)A. above.*
>
> (AR 161-162)(emphasis added)

Mr. Kern met the requirements of Section (9)B(I) cited above – He was over the age of 60 and had more than 10 years of credited service when he died. The dispute involves Section (9)B(ii) (in *italics* above), which incorporates by reference the provisions of Section (9)A. Section (9)A2 reads as follows:

> **(9) Surviving Spouse Benefits**
>
> A. The Regular Surviving Spouse Option
>
> 2. This automatic election [of a reduced monthly pension benefit] shall be deemed to have been made at the time that the employee applies for a monthly pension under Section (5), (6), (7) or (8) and the effective date of the election shall be the date his monthly pension commences except as follows:
>
> (a) *In the case of an employee who is married when his election would otherwise become effective but whose marriage at that date has been continuously in effect for less than one year, the effective date of his election shall be the first day of the month following the month in which such marriage has been continuously in effect for one year. The automatic election provided in this Paragraph A shall be applicable only with respect to an employee who is married on the date the election shall be deemed to have been made.*
>
> (AR 157-158)(emphasis added)

Distilled to its essence, under the terms of the Plan, a pension benefit is available only to those widows whose husbands satisfy the requirements of Section (9)B (I) and (ii) – that is, the deceased Chrysler employee must have met the age and service requirements in subsection (I) *and* the pension election eligibility requirements in subsection (ii). Subsection (ii) requires that an employee (assuming he had retired on the date of his death) could have elected a reduced monthly pension that would go to his wife under Section (9)A. Mr. Kern and Plaintiff had been married for less than a year at the time Mr. Kern passed, therefore Mr. Kern could not make the election.

      This Magistrate Judge finds that Defendant rationally interpreted the language of the Plan. That is all that is required to pass the arbitrary and capricious standard of review. As the Sixth Circuit explained, "[in] applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was 'rational in light of the plan's provisions.' Stated differently, when it is possible to offer a reasoned outcome, that outcome is not arbitrary or capricious." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). In this case, Defendant's interpretation of the Plan was rational, and therefore adequate to pass the arbitrary and capricious standard of review. Granted, the Plan language is somewhat opaque and could possibly submit to other interpretations. However, whether the Plan is open to other interpretations is not the question before this Court. Rather, the question is, was Defendant's interpretation of the Plan rational? – it was.

### C. Plaintiff Cannot Bring A Claim Based On The 2001 SPD Under ERISA § 502(a)(1)(B).

Plaintiff next argues that the 2001 SPD[4] supports an award of widow's pension benefits because it does not mention a minimum one-year marriage requirement and it affirmatively states that a widow "is eligible" and "shall receive" benefits if an active employee dies at or after age 60 with 10 years or more of credited service.

In support of her argument that the 2001 SPD should trump the Plan, Plaintiff cites two Sixth Circuit cases – *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134 (6th Cir. 1988) and *International Union, United Auto., Aerospace, and Agr. Implement Workers of America (UAW) v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983). *Edwards* did indeed hold that "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern." *Edwards*, 851 F.2d at 136. There are other Sixth Circuit cases in accord with this proposition. *See Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243, 247 (6th Cir. 1996) ("[I]t is the employer's duty to put employees on notice of their rights under the plan, and if they fail to adequately do so, they *will be precluded from enforcing Plan language* which conflicts with summary description language to the detriment of employees.") (emphasis added). In *Haus v. Bechtel Jacobs Co.*, LLC, 491 F.3d 557 (6th Cir. 2007), the Sixth Circuit explained:

> The principle underlying our decision in *Edwards*, and the summary plan disclosure obligations contained in ERISA § 1022, is ultimately one of pragmatic fairness. When an employer distributes a document that purports to summarize an employee's benefit information, a lay beneficiary should logically be able to rely on that summary rather than combing through the often nearly incomprehensible plan itself.... Where an employer fails to satisfy the disclosure obligations

---

[4] As noted above, Defendant revised the SPD in October 2008 (AR 81-140). Given that Mr. Kern died in 2004, the Court will review this case as if the less restrictive 2001 SPD governed.

> contained in section 1022, such that the information contained in a summary plan description is in conflict with that of the plan itself, it is logical that the courts enforce the terms of the summary plan. Moreover, such a rule comports with the legislative intent underlying ERISA, which makes clear that, "[i]t is grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts, or if these conditions were stated in a misleading or incomprehensible manner in the plan booklets." H.R. Rep. No. 93-533, 93rd Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 4639, 4646.

491 F.3d at 565

However, the Sixth Circuit has also held that *Edwards* "requires more than an inconsistency of terms. The SPD and the plan must directly conflict." *Valeck v. Watson Wyatt & Co.*, 92 Fed. App'x. 270, 272 (6th Cir. 2004); *see also Garst v. Wal-Mart Stores, Inc.*, 30 Fed. App'x. 585, 592-93 (6th Cir. 2002) ("reliance on *Edwards* was misplaced when there was nothing to indicate a conflict between the terms of the SPD and those of the underlying ERISA plan"); *Anderson v. Mrs. Grissom's Salads, Inc.*, 221 F.3d 1333, 2000 WL 875365, at *5 (6th Cir. Jun. 19, 2000) ("*Edwards* requires more than inconsistency; rather, the SPD and the Plan document must directly conflict.").

Although an argument can be made that the SPD and the Plan language conflict, Plaintiff has a bigger problem with her reliance on the 2001 SPD language. A recent Supreme Court decision altered the playing field concerning the interaction between SPDs and ERISA plan language. In *CIGNA Corp. v. Amara*, 131 S.Ct. 1866 (2011), employees of CIGNA challenged amendments to a pension plan on the grounds that the company had failed to give them proper notice of the changes and, in particular, to inform them that the new plan provided less generous benefits in certain respects. *See Amara*, 131 S.Ct. at 1870. The District Court found that CIGNA's disclosures regarding changes in the plan were incomplete and misleading, and

violated certain of ERISA's notice provisions. *Id.* at 1874–75. Relying on ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) – which authorizes a plan participant to bring suit to "recover benefits due to him under the terms of his plan" – the District Court reformed the terms of the new plan as a remedy. *Id.* at 1871, 1875–76.

Among the issues considered by the Supreme Court was whether ERISA § 502(a)(1)(B) authorized the relief provided by the District Court. *Id.* at 1871. In concluding that it did not authorize such relief, the Supreme Court determined that the ERISA provision used by the District Court did not grant courts power to change the terms of an ERISA plan. *Id.* at 1876–77. The Court also rejected an argument, made by the Solicitor General, that the District Court did not change the terms of the plan, but rather "enforce[d] the plan's terms as written" because "the 'plan' include[d] the disclosures that constituted the summary plan descriptions." *Id.* at 1877. Thus, the Supreme Court rejected the Solicitor General's assertion (on behalf of the CIGNA employees) "that the terms of statutorily required plan summaries ... necessarily may be enforced (under § 502(a)(1)(B)) as the terms of the plan itself." *Id.* Instead, the Court held that "the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." *Id.* (emphasis in original).

In this context, the Supreme Court rejected the notion that terms in an SPD "necessarily may be enforced ... as the terms of the plan itself" for several reasons: (1) statutory language "suggests that the information about the plan provided by those disclosures is not itself part of the plan;" (2) enforcing SPD terms would allow the plan administrator to effectively control "the basic terms and conditions of the plan," which is a power of the plan sponsor (and those roles are

not always carried out by the same entity); and (3) making SPD terms enforceable might lead drafters to use more complex language in SPDs in an attempt to fully describe the provisions of the plan, in frustration of ERISA's "basic [SPD] objective: clear, simple communication." *Id.* at 1877.

Plaintiff's Complaint contains a single count – "Action Under ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B), to Recover Full Benefits" (Dkt. No. 1 at 7). Based on *Amara*, however, Plaintiff may not use ERISA §502(a)(1)(B) as the vehicle to challenge Defendant's interpretation of the Plan through reliance on allegedly contradictory language contained in the 2001 SPD. Thus, Plaintiff's Complaint fails to state claim for relief to the extent Plaintiff argues that the 2001 SPD trumps the Plan.

### D. Plaintiff Has Not Stated A Viable Claim Under ERISA § 502(a)(3) For Equitable Relief.

*Amara* does not, however, completely end the discussion with regard to the 2001 SPD. The Supreme Court in *Amara* left open the possibility that plaintiffs could bring a claim under ERISA § 502(a)(3), which allows beneficiaries "to obtain other *appropriate equitable relief*" to redress violations of parts of ERISA. *See Amara*, 131 S.Ct. at 1878; *see also* 29 U.S.C. § 1132(a)(3). Plaintiff's Complaint (filed less than two weeks before *Amara* was decided) did not contain a count for equitable relief under ERISA § 502(a)(3); it only contains a prayer for an equitable remedy of "preliminary and permanent injunctions pursuant to ERISA § 502 (a)(3), 29 U.S.C. § 1132(a)(3), and Fed. R. Civ. P. 65, enjoining Defendant from denying, discontinuing, reducing, limiting, or terminating the benefits payable to Plaintiff under the Plan" (Dkt. No. 1; Compl. at 8). Giving the Plaintiff the benefit of the doubt that she has indeed brought a valid

claim under § 502(a)(3), this Magistrate Judge finds that Plaintiff cannot establish an equitable claim with regard to the 2001 SPD.

The Supreme Court noted in *Amara* that § 502(a)(3) could be used as an avenue for beneficiaries to pursue various forms of equitable relief and discussed three potential options for equitable relief – equitable estoppel, contract reformation and surcharge. *See Amara*, 131 S.Ct. at 1881-82. Since Plaintiff's Complaint did not explicitly plead any of these causes of action, a bit of creative interpretation is required on the Court's behalf to determine whether a valid equitable claim can be cobbled together from Plaintiff's Complaint (Dkt. No. 1) and motion for judgment (Dkt. No. 11).

Equitable estoppel arguably best fits the thrust of Plaintiff's argument that can be gleaned from her Complaint – *i.e.*, Plaintiff is essentially arguing that Defendant misrepresented the terms of the Plan in the 2001 SPD. The elements of equitable estoppel are: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Michigan Exp., Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004). The key element absent from Plaintiff's allegations, however, is detrimental reliance. Plaintiff's Complaint only mentions detrimental reliance in passing. Specifically, the Complaint alleges that: "Plaintiff relied to her detriment on the Company's assertion that she had no claim to Benefits in its Original Denial and did not file a written request for Benefits for several years" (Dkt. No 1; Compl. ¶ 18).[5] In other words, Plaintiff alleges she detrimentally relied on

---

[5]As a threshold matter, the "reliance" alleged fails because Chrysler's H.R. department told Plaintiff that she was ineligible for benefits – which was correct.

statements made by Chrysler after her husband's death. The detrimental reliance Plaintiff would have to plead and prove for purposes of a valid equitable estoppel claim is that she (or her husband) detrimentally relied on the 2001 SPD – before Mr. Kern passed away on August 4, 2004. Plaintiff has not pled any detrimental reliance prior to Mr. Kern's passing, thus she has not stated a valid claim of equitable estoppel.

As to contract reformation, *Amara* recognized that such a claim does not require a showing of detrimental reliance. *See Amara*, 131 S.Ct. at 1881. However, contract reformation is available to "reform contracts to reflect the mutual understanding of the contracting parties where 'fraudulent suppression[s], omission[s], or insertion[s],' 'material[ly] ... affect[ed]' the 'substance' of the contract." *Id.*[6] There is no allegation in this case that the Plan or the 2001 SPD was sullied by some sort of mutual mistake by the parties. As such, a contract reformation remedy is simply not an appropriate remedy in this matter.

Finally, the equitable remedy of surcharge also does not fit Plaintiff's allegations. *Amara* recognized that a "surcharge" claim did not contain a strict detrimental reliance requirement, however, some showing of "actual harm" would be required. *Id.* The Supreme Court indicated by way of example that the fact that a participant's work community was misled by an inadequate SPD may be enough to satisfy "actual harm" where the participant claimed that he or she relied on the work community for information regarding the plan. Translated to this case, in order to state a valid "surcharge" claim, Plaintiff would not need to show that she (or her

---

[6] Stated differently, "[c]ourts will reform an instrument to reflect the parties' actual intent where there is clear evidence that both parties reached an agreement, but as the result of mutual mistake, or mistake on one side and fraud on the other, the instrument does not express the true intent of the parties." *Olsen v. Porter*, 213 Mich. App. 25, 29 (1995).

husband) personally read and relied (to their detriment) on the 2001 SPD prior to Mr. Kern's death. Rather, it might be enough for Plaintiff to allege that she (or her husband) relied on Chrysler co-workers' interpretation of the 2001 SPD prior to Mr. Kern's death. Plaintiff makes no such allegation in this case. Thus, the equitable claim of surcharge is unavailable to Plaintiff.

### IV. CONCLUSION

For these reasons, it is **RECOMMENDED** that Defendant's motion for judgment on the administrative record (Dkt. No. 11) be **GRANTED** and that Plaintiff's motion for judgment on the administrative record (Dkt. No. 10) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                                s/Mark A. Randon
                                                MARK A. RANDON
                                                UNITED STATES MAGISTRATE JUDGE

Dated: March 16, 2012

CERTIFICATE OF SERVICE

    *I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 16, 2012.*

                                                *s/Barbara M. Radke*
                                                *Judicial Assistant to*
                                                *Magistrate Judge Mark A. Randon*
                                                *(313) 234-5540*